# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHEILA ROSS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FIAT CHRYSLER AUTOMOBILES N.V., SERGIO MARCHIONNE, RICHARD K. PALMER, and SCOTT KUNSELMAN,<br><br>Defendants. | **Case No.: 17-cv-418**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Sheila Ross ("Plaintiff"), individually and on behalf of all other persons similarly situated, by her undersigned attorneys, for her complaint against defendants, alleges the following based upon personal knowledge as to herself and her own acts and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys, which included, among other things, a review of the defendants' public documents, conference calls, and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Fiat Chrysler Automobiles N.V. ("Chrysler" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a class action on behalf of purchasers of Chrysler securities between October 13, 2014 and January 11, 2017, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Chrysler is an automotive group that designs, engineers, manufactures, distributes, and sells vehicles and components.  The Company offers passenger cars, light trucks, and light commercial vehicles under brand names, including Chrysler, Dodge, Fiat, Jeep, and Ram.  Chrysler provides retail and dealer financing, leasing, and rental services as well as engages in media and publishing business.  The Company sells its products directly, or through distributors and dealers, in approximately 150 countries.

3.     Chrysler was founded in October 2014 as the result of a merger that completed the integration of Fiat Group Automobiles ("Fiat") and Chrysler LLC.  Chrysler is incorporated in the Netherlands, with headquarters in London, United Kingdom.  Its shares trade on the NYSE under the ticker symbol "FCAU."

4.     Throughout the Class Period, defendants made false and/or misleading statements as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, defendants made false and/or misleading statements and/or failed to disclose that:  (i) the Company's slow completion rates for recalls, slow or inadequate notifications to regulators and consumers, and faulty approaches to addressing safety issues and improper actions by dealers were not in compliance with federal laws and regulations; (ii) the Company was illegally using hidden software to allow excess diesel emissions to go undetected; and (iii) as a result of the foregoing, defendants' statements about Chrysler's business, operations, and prospects were false and misleading and/or lacked a reasonable basis.

5.      On Sunday, July 26, 2015, the National Highway Traffic Safety Administration ("the NHTSA") announced its imposition on the Company of a record $105 million fine in connection with the Company's handling of 23 previous recalls affecting more than 11 million vehicles.  The NHTSA penalties were tied to violations in an array of areas, including misleading regulators, inadequate repairs, and failure to alert affected car owners in a timely manner.  The NHTSA stated, in part:

> ***Fiat Chrysler's pattern of poor performance put millions of its customers, and the driving public, at risk*** . . . . This action will provide relief to owners of defective vehicles, will help improve recall performance throughout the auto industry, and gives Fiat Chrysler the opportunity to embrace a proactive safety culture.

(Emphasis added.)

6.      On this news, the Company's stock fell $0.74, or roughly 4.9%, per share to close at $14.41 on July 27, 2015.

7.      On October 28, 2015, Chrysler announced results for Q3 2015, informing investors that the Company recorded "a €761 million pre-tax charge for estimated future recall campaign costs for vehicles sold in prior periods in NAFTA."  The market immediately made the connection between the charge and the Company's regulatory violations for failure to properly conduct recalls.  Shortly after Chrysler's announcement, *Bloomberg* reported:  "The manufacturer set aside 761 million euros in the quarter for 'estimated future recall campaign costs' in North America, where U.S. regulators <u>ordered</u> it in July to buy back vehicles." (Emphasis in original.)

8.      On this news, the Company's stock fell $0.69, or roughly 4.7%, per share to close at $14.72 on October 28, 2015.

3

9.     On December 9, 2015, after the close of trading, the market learned that NHTSA was fining Chrysler an additional $70 million for its failure to report incidents of death and injury as well as consumer complaints and warranty claims dating back to 2003.  Chrysler admitted that the violations "are significant and date back to the inception of the early warning reporting requirements in 2003."

10.     On January 11, 2017, the U.S. Environmental Protection Agency ("EPA") announced that the Company was illegally using hidden software to allow excess diesel emissions to go undetected.  The EPA and California Air Resources Board stated that they believe the Company's undeclared auxiliary emissions control software allowed vehicles to generate excess pollution in violation of the law and each agency issued notices of violation.  "*This is a clear and serious violation of the Clean Air Act*," said Cynthia Giles, assistant administrator for the EPA.  (Emphasis added.)

11.     On this news, the Company's stock fell $1.35, or roughly 10.3%, per share to close at $9.95 on January 12, 2017.

12.     As a result of defendants' wrongful acts and omissions and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

13.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

14.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

15.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the preparation and dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

16.     In connection with the acts, transactions, and conduct alleged herein, defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

17.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Chrysler common stock during the Class Period and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

18.     Defendant Chrysler is a Netherlands corporation with its principal executive offices located at 25 St. James's Street, London SW1A 1HA, United Kingdom.

19.     Defendant Sergio Marchionne ("Marchionne") has served at all relevant times as Chief Executive Officer and Executive Director of Chrysler.

20.     Defendant Richard K. Palmer ("Palmer") has served at all relevant times as Chief Financial Officer of Chrysler.

21.     Defendant Scott Kunselman ("Kunselman") served as Chrysler's head of Vehicle Safety and Regulatory Compliance from August 12, 2014 until November 30, 2015, reporting directly to defendant Marchionne.

22.     The defendants referenced above in ¶¶ 19-21 are sometimes collectively referred to herein as the "Individual Defendants."

## FURTHER SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading
### Statements Issued During the Class Period

23.     On August 1, 2014, Fiat shareholders approved the merger of Fiat into Chrysler. On October 12, 2014, the merger was finalized, and on October 13, 2014, the newly merged company's common stock started trading on the NYSE.

24.     On August 12, 2014, Chrysler announced the establishment of a new office of Vehicle Safety and Regulatory Compliance that reported directly to the Company's CEO defendant Marchionne, claiming "[t]his action will help intensify the Company's continuing commitment to vehicle safety and regulatory compliance."

25.     On October 29, 2014, Chrysler issued a press release and filed a Form 6-K with the SEC, which was signed by defendant Palmer, announcing its financial and operating results for the quarter and nine months ended September 30, 2014 (the "October 29, 2014 6-K").  For the quarter, net profit was €188 million on revenue of €23.6 billion, compared to a net profit of €189 million on revenue of €20.693 billion for the same period in the prior year.  For the nine months, net profit was €212 million, or €0.132 per share, on revenue of €69.006 billion, compared to a net profit of €655 million, or €0.036 per share, on revenue of €62.681 billion for the same period in the prior year.

26.     On November 6, 2014, Chrysler filed a Form 6-K with the SEC, which was signed by defendant Palmer, appending as an exhibit an Interim Report reiterating the Company's previously announced financial and operating results for the quarter and nine months ended September 30, 2015 (the "November 6, 2014 6-K").  In addition to the information

announced in the Company's October 29, 2014 6-K, the November 6, 2014 6-K reported net profit of €0.142 per diluted share for the quarter, compared to a net loss of €0.013 per diluted share for the same period in the prior year, and net profit of €0.130 for the nine months, compared to a net profit of €0.036 for the same period in the prior year.

27.     On November 13, 2014, Chrysler filed a Form F-1/A with the SEC, which was signed by defendants Palmer and Marchionne.   The F-1/A included unaudited financial statements for the three and nine months ended September 30, 2014 and audited financial statements for the years ended December 31, 2013 and 2012, prepared in conformance with IFRS.  The F-1/A asserted that for the nine months ended September 30, 2014, cost of sales was €59.694 million, EBIT was €2.157 million, and net profit was €212 million, or €0.132 per share, compared to a cost of sales of €53.706 million, EBIT of €2.542 million and a net profit of €655 million, or €0.036 per share for the same period in the prior year.  For the year ended December 31, 2013, cost of sales was reported as €74,326 million, EBIT was €3,002 million, and net profit was €1,951 million, or €0.736 per share.

28.     The November 13, 2014 Form F-1A further represented:  "***Our vehicles and the engines that power them must also comply with extensive regional, national and local laws and regulations and industry self-regulations (including those that regulate vehicle safety***, end-of-life vehicles, ***emissions*** and noise).  ***We are substantially in compliance with the relevant global regulatory requirements affecting our facilities and products.  We constantly monitor such requirements and adjust our operations to remain in compliance.***"  (Emphases added.)

7

29.     On November 26, 2014, Chrysler filed a Form F-1/A with the SEC, which was signed by defendants Palmer and Marchionne reiterating previously announced financial and operating results for the quarter ended September 30, 2015.

30.     The November 26, 2014 F-1/A included the representation:  "***Our vehicles and the engines that power them must also comply with extensive regional, national and local laws and regulations and industry self-regulations (including those that regulate vehicle safety***, end-of-life vehicles, ***emissions*** and noise).  ***We are substantially in compliance with the relevant global regulatory requirements affecting our facilities and products.  We constantly monitor such requirements and adjust our operations to remain in compliance.***"  (Emphases added.)

31.     On December 11, 2014, Chrysler issued a press release, and on December 12, 2014 Chrysler filed with the SEC (i) a prospectus on Form 424B4 offering 87 million shares of the Company's common stock; and (ii) a prospectus on Form 424B4 offering $2.5 billion aggregate amount of the Company's mandatory convertible securities (collectively, the "Prospectuses").  Each of the Prospectuses reiterated the Company's previously announced financial and operating results for the quarter ended September 30, 2015.

32.     On January 28, 2015, Chrysler issued a press release and filed a Form 6-K with the SEC, which was signed by defendant Palmer, announcing its financial and operating results for the quarter and the fiscal year ended December 31, 2014 (the "January 28, 2015 6-K").  For the quarter, net profit was €420 million, or €0.329 per share, on revenue of €27.084 billion, compared to a net profit of €1.296 billion, or €0.707 per share, on revenue of €23.943 billion for the same period in the previous year.  For the year, net profit was €0.632 billion, or €0.465 per

share, on revenue of €96.090 billion, compared to a net profit of €1.951 billion, or €0.744 per share, on revenue of €86.624 billion for 2013.

33.    On March 5, 2015, Chrysler issued a press release and filed an Annual Report on Form 20-F with the SEC, which was signed by defendant Palmer, and reiterated the Company's previously announced financial and operating results for the fiscal year ended December 31, 2014 (the "2014 20-F").  In addition to the information announced in the Company's January 28, 2014 6-K, the 2014 20-F reported a net profit of €0.460 per diluted share, compared to a net profit of €0.736 per diluted share for 2013.  The 2014 20-F appended as exhibits signed certifications pursuant to the Sarbanes-Oxley Act of 2002 by defendants Marchionne and Palmer, stating that the financial information contained in the 2014 20-F was accurate and disclosed any material changes to the Company's internal control over financial reporting.

34.    The 2014 20-F stated, "***Our vehicles and the engines that power them must also comply with extensive regional, national and local laws and regulations and industry self-regulations (including those that regulate vehicle safety***, end-of-life vehicles, ***emissions*** and noise).  ***We are substantially in compliance with the relevant global regulatory requirements affecting our facilities and products.  We constantly monitor such requirements and adjust our operations to remain in compliance.***"  (Emphases added.)  Furthermore, regarding the 2014 annual report, the Company's website stated under the heading "Managing Vehicle Safety," in part:

> At [Chrysler], we take transportation safety personally.  ***Customers trust the quality and safety of our products, and we constantly do our utmost to warrant this confidence***. . . .
>
> In addition, the safety organizations in [Chrysler's] four regions . . . constantly share information and best practices in order to harmonize design guidelines and processes.  ***Safety design guidelines are implemented from the concept phase of***

9

*every new model through the release of detailed design specifications to all the
providers of sub-systems for the vehicle.*

Our overall approach recognizes that safer highways, improved traffic
management and driver education all have a role to play in enhancing safety on
the road.  That is why we strive to connect our safety efforts to a collective goal
we share with our employees, drivers, dealers, suppliers, law enforcement,
regulators and researchers.

(Emphases added.)[1]

35.     On April 29, 2015, Chrysler issued a press release and filed a Form 6-K with the

SEC, which was signed by defendant Palmer, announcing its financial and operating results for

the first quarter of 2015 (the "April 29, 2015 6-K").  Net profit was €92 million, or €0.052 per

diluted share, on revenue of €26.396 billion, compared to a net loss of €173 million, or €0.155

per diluted share, on revenue of €22.125 billion for the same period in the prior year.

36.     On May 7, 2015, Chrysler filed a Form 6-K with the SEC, which was signed by

defendant Palmer, appending as an exhibit an Interim Report reiterating the Company's

previously announced financial and operating results for the quarter ended March 31, 2015 (the

"May 7, 2015 6-K").

37.     On July 30, 2015, Chrysler issued a press release and filed a Form 6-K with the

SEC, which was signed by defendant Palmer, announcing its financial and operating results for

the second quarter of 2015 (the "July 30, 2015 6-K").  Net profit was €333 million, or €0.212 per

diluted share, on revenue of €29.228 billion, compared to a net profit of €197 million, or €0.142

per diluted share, on revenue of €23.328 billion for the same period in the prior year.

38.     On August 6, 2015, Chrysler filed a Form 6-K with the SEC, which was signed by

defendant Palmer, appending as an exhibit an Interim Report reiterating the Company's

---

[1] Available online at *http://2014annualreport.fcagroup.com/en/report-operations/sustainability-
disclosure/customer-focused-approach* (last visited January 19, 2017).

previously announced financial and operating results for the quarter ended June 30, 2015 (the "August 6, 2015 6-K").

39.    On October 28, 2015, Chrysler issued a press release and filed a Form 6-K with the SEC, which was signed by defendant Palmer, announcing its financial and operating results for the third quarter of 2015 (the "October 28, 2015 6-K").  Net loss was €299 million, or €0.202 per diluted share, on revenue of €27.468 billion, compared to a net profit of €188 million, or €0.142 per diluted share, on revenue of €23.553 billion for the same period in the prior year.

40.    On November 6, 2015, Chrysler filed a Form 6-K with the SEC, which was signed by defendant Palmer, appending as an exhibit an Interim Report reiterating the Company's previously announced financial and operating results for the quarter ended September 30, 2015 (the "November 6, 2015 6-K").

41.    On January 27, 2016, Chrysler issued a press release and filed a Form 6-K with the SEC, which was signed by defendant Palmer, announcing its financial and operating results for the quarter and the fiscal year ended December 31, 2015 (the "January 27, 2016 6-K").  For the quarter, net profit was €251 million, or €0.160 per share, on revenue of €29.414 billion, compared to a net profit of €420 million, or €0.328 per share, on revenue of €26.420 billion for the same period in the previous year.  For the year, net profit was €377 million, or €0.221 per diluted share, on revenue of €110.595 billion, compared to a net profit of €632 million, or €0.460 per diluted share, on revenue of €93.640 billion for 2014.

42.    On February 29, 2016, Chrysler issued a press release and filed an Annual Report on Form 20-F with the SEC, which was signed by defendant Palmer, and reiterated the Company's previously announced financial and operating results for the fiscal year ended December 31, 2015 (the "2015 20-F").  The 2015 20-F appended as exhibits signed certifications

pursuant to the Sarbanes-Oxley Act of 2002 by defendants Marchionne and Palmer, stating that the financial information contained in the 2014 20-F was accurate and disclosed any material changes to the Company's internal control over financial reporting.

43.     The 2015 20-F stated, "We manufacture and sell our products and offer our services around the world. [sic] **with requirements relating to reduced emissions,** increased fuel economy. . . . Our vehicles and the engines that power them must also comply with extensive regional, national and local laws and regulations and industry self-regulations (including those that regulate **emissions** certification, end-of-life vehicles and the chemical content of our parts, noise, and worker health and **safety**).   In addition, **vehicle safety regulations are becoming increasingly strict**.  **We are substantially in compliance with the relevant global regulatory requirements affecting our facilities and products.  We constantly monitor such requirements and adjust our operations and processes to remain in compliance**."  (Emphases added.)

44.     On April 26, 2016, Chrysler issued a press release and filed a Form 6-K with the SEC, which was signed by defendant Palmer, announcing its financial and operating results for the first quarter of 2016 (the "April 26, 2016 6-K").  Net profit was €478 million, or €0.338 per diluted share, on revenue of €26.570 billion, compared to a net profit of €27 million, or €0.016 per diluted share, on revenue of €25.843 billion for the same period in the prior year.

45.     On May 4, 2016, Chrysler filed a Form 6-K with the SEC, which was signed by defendant Palmer, appending as an exhibit an Interim Report reiterating the Company's previously announced financial and operating results for the quarter ended March 31, 2016 (the "May 4, 2016 6-K").

46.     On July 27, 2016, Chrysler issued a press release and filed a Form 6-K with the SEC, which was signed by defendant Palmer, announcing its financial and operating results for

the second quarter of 2016 (the "July 27, 2016 6-K").  Net profit was €321 million, or €0.199 per

diluted share, on revenue of €27.893 billion, compared to a net profit of €257 million, or €0.167

per diluted share, on revenue of €28.540 billion for the same period in the prior year.

47.     On August 4, 2016, Chrysler filed a Form 6-K with the SEC, which was signed by

defendant Palmer, appending as an exhibit a Semi-Annual Report reiterating the Company's

previously announced financial and operating results for the quarter ended June 30, 2016 (the

"August 4, 2016 6-K").

48.     On October 25, 2016, Chrysler issued a press release and filed a Form 6-K with

the SEC, which was signed by defendant Palmer, announcing its financial and operating results

for the third quarter of 2016 (the "October 25, 2016 6-K").  Net profit was €606 million, or

€0.338 per diluted share, on revenue of €26.836 billion, compared to a net loss of €387 million,

or €0.255 per diluted share, on revenue of €26.798 billion for the same period in the prior year.

49.     On November 2, 2016, Chrysler filed a Form 6-K with the SEC, which was

signed by defendant Palmer, appending as an exhibit an Interim Report reiterating the

Company's previously announced financial and operating results for the quarter ended

September 30, 2016 (the "November 2, 2016 6-K").

50.     The statements referenced in ¶¶ 25-51 were materially false and misleading

because defendants made false and/or misleading statements and failed to disclose material

adverse facts about the Company's business, operations, prospects, and performance.

Specifically, during the Class Period, defendants made false and/or misleading statements and/or

failed to disclose that:  (i) the Company's slow completion rates for recalls, slow or inadequate

notifications to consumers and regulators, and faulty approaches to addressing safety issues and

improper actions by dealers were not in compliance with federal laws and regulations; (ii) the

Company was illegally using hidden software to allow excess diesel emissions to go undetected; and (iii) as a result of the foregoing, the Company's financial statements were false and misleading and/or lacked a reasonable basis at all relevant times.

## **The Truth Begins to Emerge**

51.    On Sunday, July 26, 2015, the NHTSA announced its imposition on the Company of a record $105 million fine in connection with the Company's handling of 23 previous recalls affecting more than 11 million vehicles.  The NHTSA penalties were tied to violations in an array of areas, including misleading regulators, inadequate repairs, and failing to alert affected car owners in a timely manner.  The NHTSA stated, in part:

> *Fiat Chrysler's pattern of poor performance put millions of its customers, and the driving public, at risk.* . . . This action will provide relief to owners of defective vehicles, will help improve recall performance throughout the auto industry, and gives Fiat Chrysler the opportunity to embrace a proactive safety culture.

(Emphasis added.)

52.    On this news, the Company's stock fell $0.74, or roughly 4.9%, per share to close at $14.41 on July 27, 2015.

53.    On October 28, 2015, Chrysler announced results for Q3 2015, informing investors that the Company recorded "a €761 million pre-tax charge for estimated future recall campaign costs for vehicles sold in prior periods in NAFTA."

54.    On this news, the Company's stock fell $0.69, or roughly 4.5%, per share to close at $14.72 on October 28, 2015.

55.    The market immediately made the connection between the charge and the Company's regulatory violations for failure to properly conduct recalls.  Shortly after Chrysler's announcement, *Bloomberg* reported:  "The manufacturer set aside 761 million euros in the

quarter for 'estimated future recall campaign costs' in North America, where U.S. regulators <u>ordered</u> it in July to buy back vehicles."

56.     On December 9, 2015, after the close of trading, the market learned that NHTSA was fining Chrysler an additional $70 million for its failure to report incidents of death and injury as well as consumer complaints and warranty claims dating back to 2003.  Chrysler admitted that the violations "are significant and date back to the inception of the early warning reporting requirements in 2003."

57.     On January 11, 2017, the EPA announced that the Company was illegally using hidden software to allow excess diesel emissions to go undetected.  The EPA and California Air Resources Board stated that they believe the Company's undeclared auxiliary emissions control software allowed vehicles to generate excess pollution in violation of the law and each agency issued notices of violation.  "***This is a clear and serious violation of the Clean Air Act***," said Cynthia Giles, assistant administrator for the EPA.  (Emphasis added.)

58.     On this news, the Company's stock fell $1.35, or roughly 10.3%, per share to close at $9.95 on January 12, 2017.

59.     As a result of defendants' wrongful acts and omissions and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

60.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Chrysler securities during the Class Period (the "Class") and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are

defendants herein; the officers and directors of the Company, at all relevant times; members of their immediate families and their legal representatives, heirs, successors, or assigns; and any entity in which defendants have or had a controlling interest.

61.     The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, Chrysler securities were actively traded on the NYSE.   While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.   Record owners and other members of the Class may be identified from records maintained by Chrysler or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

62.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

63.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

64.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.   Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations, and management of Chrysler;

- whether the Individual Defendants caused Chrysler to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Chrysler securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

65.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense, and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

66.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Chrysler securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired, and/or sold Chrysler securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

67.   Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

68.   Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Against All Defendants for Violations of
### Section 10(b) and Rule 10b-5 Promulgated Thereunder

69.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

70.   This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

71.   During the Class Period, defendants engaged in a plan, scheme, conspiracy, and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices, and courses of business, which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts; omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes, and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Chrysler securities; and (iii) cause Plaintiff and other members of the Class to purchase or

otherwise acquire Chrysler securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, defendants, and each of them, took the actions set forth herein.

72.    Pursuant to the above plan, scheme, conspiracy, and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases, and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Chrysler securities.  Such reports, filings, releases, and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Chrysler's finances and business prospects.

73.    By virtue of their positions at Chrysler, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants.  Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth.  In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

74.    Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Chrysler securities from their personal portfolios.

75.     Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control.  As the senior managers and/or directors of Chrysler, the Individual Defendants had knowledge of the details of Chrysler's internal affairs.

76.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Chrysler.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Chrysler's businesses, operations, future financial condition, and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Chrysler securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Chrysler's business and financial condition, which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Chrysler securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities, and/or upon statements disseminated by defendants, and they were damaged thereby.

77.     During the Class Period, Chrysler securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Chrysler securities at prices artificially inflated by defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or

20

otherwise acquired said securities, or they would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Chrysler securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Chrysler securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

78.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

79.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions, and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### Violations of Section 20(a) of the
### Exchange Act Against the Individual Defendants

80.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

81.     During the Class Period, the Individual Defendants participated in the operation and management of Chrysler and conducted and participated, directly and indirectly, in the conduct of Chrysler's business affairs.  Because of their senior positions, they knew the adverse non-public information about Chrysler's misstatement of income and expenses and false financial statements.

82.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Chrysler's financial condition and results of operations and to correct promptly any public statements issued by Chrysler, which had become materially false or misleading.

83.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases, and public filings, which Chrysler disseminated in the marketplace during the Class Period concerning Chrysler's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Chrysler to engage in the wrongful acts complained of herein.  The Individual Defendants, therefore, were "controlling persons" of Chrysler within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged, which artificially inflated the market price of Chrysler securities.

84.     Each of the Individual Defendants, therefore, acted as a controlling person of Chrysler.  By reason of their senior management positions and/or being directors of Chrysler, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Chrysler to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Chrysler and possessed the power to control the specific activities, which comprise the primary violations about which Plaintiff and the other members of the Class complain.

85.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Chrysler.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees, and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  January 19, 2017

**BRAGAR EAGEL & SQUIRE P.C.**

*/s/ Todd H. Henderson*
J. Brandon Walker
Todd H. Henderson
885 Third Avenue, Suite 3040
New York, NY 10022
Tel: 212-308-5858
Fax: 212-214-0506

*Counsel for Plaintiff*

## SWORN CERTIFICATION OF PLAINTIFF

## FIAT CHRYSLER AUTOMOBILES N.V. SECURITIES LITIGATION

I, Sheila Ross, individually, and/or in my capacity as trustee and/or principal for accounts listed on Schedule A, certify that:

1.      I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.      I did not purchase **FIAT CHRYSLER AUTOMOBILES N.V.**, the security that is the subject of this action, at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.      I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.      My transactions in **FIAT CHRYSLER AUTOMOBILES N.V.** during the Class Period set forth in the Complaint are as follows:

        (See attached transactions)

5.      I have not served as a representative party on behalf of a class under this title during the last three years, except for the following:

6.      I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

1/18/2017
_____
Date

DocuSigned by:

*Sheila Ross*
_____
C6BBB7F381D045D...

Sheila Ross

**SCHEDULE A**

Class Period Transactions of Sheila Ross in Fiat Chrysler Automobiles N.V. (NYSE: FCAU)

| Transaction | Date | Shares | Price |
| --- | --- | --- | --- |
| Purchase | 05/27/2015 | 600 | $15.9699 |